**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Civil Action No. 13-cv-00504-REB

PAULINE CARTER,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

## ORDER AFFIRMING COMMISSIONER

**Blackburn, J.**

      The matter before me is plaintiff's **Complaint** [#1],[1] filed February 26, 2013, seeking review of the Commissioner's decision denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

      Plaintiff alleges that she is disabled as a result of a right hip fracture, degenerative joint disease of the knees, and depression. Plaintiff filed an application for disability insurance benefits in 2002 and was awarded a closed period of benefits for the period of April 28, 2001, through June 5, 2002. However, plaintiff continued to receive benefit payments until June 2007, when she was notified that benefits would no longer

---

[1] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

be paid. Plaintiff requested reconsideration of that determination and the case was processed as a request for hearing on an initial application. Following protracted proceedings at the administrative level,[2] a hearing was held on November 27, 2012. At the time of this hearing, plaintiff was 56 years old. She has high school education and past relevant work experience as an order clerk and customer service representative. She did not engage in substantial gainful activity between April 28, 2001, her alleged date of onset, and December 31, 2007, her date last insured. *See* 20 C.F.R. § 404.131(a).

The ALJ found that plaintiff was not disabled after June 5, 2002, because she experienced medical improvement in her impairment related to her ability to work, and therefore that she was not entitled to disability insurance benefits past that date. Although the medical evidence established that plaintiff suffered from severe impairments after June 5, 2002, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ found that plaintiff had the residual functional capacity to perform unskilled sedentary work with postural limitations. Although these findings precluded plaintiff's past relevant work, the ALJ concluded that there were jobs existing in significant numbers in the national economy that she could perform. The ALJ therefore

---

[2] Plaintiff's first hearing, held in September 2007, resulted in a determination that she had not been disabled at any point since April 28, 2001. (Tr. 10-22.) Since this conclusion conflicted with the Commissioner's initial determination that plaintiff was entitled to a closed period of benefits, the case was remanded for reconsideration. (Tr. 296-308.) A second hearing was held in December 2010, following which the ALJ concluded that plaintiff met the requirements of listing 1.06 from April 28, 2001, through June 5, 2002, but that she was not disabled thereafter. (Tr. 572-585.) Because the ALJ failed to apply the standards applicable to cases involving medical improvement, however, the Appeals Council remanded for a third hearing. It is this most recent hearing that forms the basis of the current appeal.

found plaintiff not disabled at step five of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II. STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." **Campbell v. Bowen**, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See **Kelley v. Chater**,* 62 F.3d 335, 338 (10th Cir. 1995).

A claimant who has previously been found disabled is subject to periodic review to determine her continuing entitlement to benefits. *See* 20 C.F.R. § 404.1594(a). The standards for deciding continuing eligibility apply both when benefits are sought to be terminated and when the Commissioner awards a closed period of benefits. **Shepherd v. Apfel**, 184 F.3d 1196, 1200 (10th Cir. 1999). Benefits will be discontinued when there has been medical improvement in the claimant's impairments that is related to the ability

to do work.  20 C.F.R. § 404.1594(a).  "Medical improvement" is any decrease in the medical severity of the impairments based on changes in the symptoms, signs, and/or laboratory findings associated therewith.  *Id.*, § 404.1594(b)(1).  Medical improvement is related to the ability to do work if these changes correspond to an increase in the claimant's functional capacity to perform basic work activities.  *Id.*, §§ 404.1594(b)(3) & (b)(4).

The Commissioner has established a seven-step sequential evaluation process for determining whether a claimant who has previously been found disabled has experienced medical improvement related to the ability to do work:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity.  A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimant's impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

3. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must then determine whether there has been any medical improvement in that condition.

4. If there has been medical improvement, the ALJ must consider whether such improvement is related to the ability to work.

5. If the ALJ finds that the claimant has experienced medical improvement related to the ability to work, she must then determine whether all current impairments are severe.

6. If the claimant's remaining impairments are severe, the ALJ must determine whether the claimant can perform her past work despite any limitations.

7. If the claimant does not have the residual functional capacity to perform his past work, the ALJ must decide whether the

> claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1594(f)(1)-(8). *See also Hayden v. Barnhart*, 374 F.3d 986, 988 (10th Cir. 2004). The Commissioner bears the burden of demonstrating that the claimant has experienced medical improvement such that she now can engage in substantial gainful activity. 20 C.F.R. § 404.1594(b)(5); *Glenn v. Shalala*, 21 F.3d 983, 987 (10th Cir. 1994); *Underwood v. Shalala*, 985 F.Supp. 970, 977 (D. Colo. 1997).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. *Hedstrom v. Sullivan*, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

### III. LEGAL ANALYSIS

Plaintiff alleges that the ALJ violated the termination rules, erred in assessing her residual functional capacity, weighed improperly the medical source opinions of record, discredited wrongfully her subjective reports of pain and functional limitation, and failed to sustain her burden of proof at step 7 of the sequential evaluation. Finding no such reversible error in the ALJ's decision, I affirm.

Plaintiff's argument that the Commissioner violated the termination rules is somewhat difficult to parse. Plaintiff suggests that the ALJ's reliance on the Commissioner's August 27, 2002, disability determination as the "comparison point decision" ("CPD")[3] in this case was problematic because that decision does not indicate that plaintiff was entitled to a closed period of benefits, but rather infers that she would continue to receive benefits, subject to periodic review. (Tr. 73-77, 264.) In her reply brief, she clarifies that "[t]he problem with the decision's analysis is that medical improvement was not compared to the claimant's condition on the CPD [in August, 2002], but upon the June 5, 2002 date when [plaintiff] was determined to no longer meet

---

[3] In determining whether medical improvement has occurred, the Commissioner

> will compare the current medical severity of that impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled to the medical severity of that impairment(s) at that time. . . . The most recent favorable medical decision is the latest decision involving a consideration of the medical evidence and the issue of whether you were disabled or continued to be disabled which became final.

20 C.F.R. § 404.1594(b)(7). The most recent favorable medical decision is the CPD in most cases. *See* Social Security Administration, **Program Operations Manual System** [hereinafter "POMS"] DI 28020.015(D)(2) (available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0428010105) (last accessed March 20, 2014). Although cases involving a closed period of benefits the onset date, rather than the most recent favorable medical decision, is to be used as the CPD, *see* POMS DI 28010.105(D)(3), plaintiff fails to address this issue, much less show prejudice resulting from the CPD chosen.

a listing." (Plf. Reply Br. at 3.)

However, as with the majority of the arguments presented in this appeal, plaintiff fails to demonstrate how this alleged error in choosing the CPD prejudiced her substantial rights. *See Williams v. Chater*, 1995 WL 490280 at *2 (10th Cir. Aug.16, 1995) ("Procedural imperfection that does not affect a party's substantive rights is not a basis for reversal."); *Bernal v. Bowen*, 851 F.2d 297, 303 (10th Cir. 1988) (mere fact of error does not warrant remand if the ALJ's determination is otherwise supported by substantial evidence).[4] The ending date of plaintiff's disability and the CPD were less than 3 months apart. Plaintiff points to no evidence suggesting that any critical change – or indeed, anything at all relevant to her medical condition – happened during this brief period.

Instead, plaintiff's chief complaint appears to be that the Commissioner's termination decision was unfair because she seemed to indicate in August 2002 that plaintiff was entitled to continuing benefits, and, indeed, continued to pay plaintiff benefits for years past the date her disability purportedly ended. Although such considerations might be relevant if the Commissioner were seeking reimbursement of the overpayment, *see* 20 C.F.R. § 404.506(a), it is not for purposes of this appeal. Plaintiff presents nothing establishing that the termination procedure was not followed

---

[4] Likewise, plaintiff raises the prospect that the termination proceedings violated her right to due process, but fails to actually develop that line of argument. I am neither required nor inclined to consider such inadequately developed issues. *See Klein v. Colvin* 2014 WL 984482 at *2 n.2 (D. Colo. March 13, 2014) (citing *Adler v. Wal–Mart Stores, Inc*., 144 F.3d 664, 679 (10th Cir .1998)). Moreover, plaintiff has been afforded both adequate notice of both administrative hearings (Tr. 27-31, 272-281) and all appellate remedies in connection with the termination decision. Due process requires no more. *See LaChance v. Erickson*, 522 U.S. 262, 266, 118 S.Ct. 753, 756, 139 L.Ed.2d 695 (1998); *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976).

once the Commissioner realized that benefits had been continued beyond the date on which plaintiff's impairment had been found to be no longer meet the Listings.[5] This argument therefore fails.

Plaintiff next argues that the ALJ's determination of her residual functional capacity after June 5, 2002, is flawed. This argument takes several forms. First, plaintiff points to evidence in the record showing evidence of possible bursitis or, alternatively, a non-union of the hip (Tr. 179), as well as knee instability and a July 2003 knee surgery (Tr. 658). Yet the ALJ actually addressed this evidence, specifically discussing the fact that plaintiff required a second surgery in January 2002 to fix a non-union of the previous hip fracture.[6] She noted, however, that x-rays of June 5, 2002, showed that the fracture had healed. (Tr. 268, 182.) Similarly, the ALJ acknowledged that plaintiff underwent ACL repair in 2003 and throughly discussed the evidence of record regarding her complaints of knee pain. (Tr. 268.)[7] I perceive no error in the

---

[5] Contrary to plaintiff's suggestion, the opinion of the state agency physician, Dr. Alan Ketelhorn, does not support a finding of continued disability after June 5, 2002. Dr. Ketelhorn plainly stated that plaintiff met the requirements of section 1.06A of the Listings through June 5, 2002, but that "[a]fter this period, a seated-[light] RFC is proposed." The additional statement that plaintiff's "statements are credible" must be read in the context of these actual opinions, which clearly do not suggest that plaintiff's disability continued. (Tr. 191.)

[6] Although plaintiff is correct that the ALJ did not discuss bursitis, it is clear that it was ultimately determined that it was the non-union of the fracture, not bursitis, that was responsible for plaintiff's continuing complaints of pain. (*See* Tr. 183.)

[7] Plaintiff suggests that her knee complaints were related to the original motor vehicle accident that gave rise to her period of disability. (*See* Tr. 667.) It is not clear to the court what such recognition adds to the force of plaintiff's arguments. The relevant question does not concern the genesis of plaintiff's various impairments, but whether those impairments were disabling after June 5, 2002. Moreover, it is not clearly supported by the evidence. (*See* Tr. 511 (1987 statement from Dr. Phillip Graehl that plaintiff suffered a left knee ACL rupture and later meniscus tear and "wished to defer any [ACL] reconstruction" at that time).)

ALJ's consideration of these issues.[8]

Plaintiff next argues that the ALJ failed to consider properly whether she met the requirements of section 1.02 of the Listings. The social security regulations include a listing of physical and mental impairments that are presumptively disabling (the "Listings"). *See* 20 C.F.R., Pt. 404, Subpt. P, app. 1. Section 1.02 of the Listings addresses "major dysfunction of a joint(s) (due to any cause)." Such an impairment is presumptively disabling if there is evidence, *inter alia*, of "[i]nvolvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R., Pt. 404, Subpt. P, app. 1, § 1.02A.[9] Under the Commissioner's definition, "[i]nability to ambulate effectively . . . is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id.* § 1.00B(2)(b)(1). Plaintiff presents no evidence suggesting that she requires this level of assistance in walking.[10] Accordingly, there

---

[8] Instead, it appears to this court that plaintiff's chief contention in this regard is that the ALJ discredited her subjective reports of pain. The issues raised by and inherent to such an argument are discussed more fully below.

[9] In addition to this requirement, the "capsule definition" of the Listing requires proof of

> gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).

20 C.F.R. Pt. 404, Subpt. P, app. 1, § 1.02. Plaintiff presents neither evidence nor argument suggesting that her knee impairment met these further requirements. *See Barnes v. Barnhart*, 116 Fed. Appx. 934, 939 (10th Cir. 2004).

[10] Instead, plaintiff points principally to her own allegations regarding her functional limitations. (*See* Plf. Br. at 11.) Again, these issues will be considered more fully in connection with plaintiff's arguments regarding the ALJ's assessment of her credibility.

was no prejudicial error in failing to consider the applicability of this Listing.

Plaintiff further perceives error in the ALJ's consideration of the various medical opinions of record. She claims that the ALJ improperly gave greater weight to the opinion of the non-examining physician, Dr. Alan Ketelhorn (Tr. 186-193),[11] than that of Dr. Velma Campbell, a consultative examiner (Tr. 202-204). However, other than noting the mere fact that the ALJ gave greater weight to Dr. Ketelhorn's opinion, plaintiff offers neither argument nor evidence suggesting that she erred in her evaluation of these opinions.[12]

Nor do I perceive any error. Although it is true that Dr. Campbell's opinion was based on a personal evaluation of plaintiff, while Dr. Ketelhorn merely reviewed the medical evidence of record, the nature of the examining relationship is but one factor that bears on the weight to be given to a medical source opinion. *See* 20 C.F.R. § 404.1527(c)(1). The ALJ also properly considered that, other than knee surgery in 2003, plaintiff sought no treatment for her allegedly disabling impairments between June 5, 2002, and August 2006, when findings were comparatively mild. Although further knee surgery was recommended in September 2007, plaintiff did not return for follow-up until the following February (after her date last insured) and did not actually have

---

[11] As discussed previously, plaintiff takes Dr. Ketelhorn's notation that her complaints were credible (Tr. 191) entirely out of context. (*See supra* note 5.) In addition, such a statement is not a medical opinion at all, and therefore entitled to no special weight in the ALJ's analysis. *See* 20 C.F.R. § 404.1527(a)(2); *Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008).

[12] Moreover, plaintiff fails to substantiate her bare *ipse dixit* insistence that adoption of Dr. Campbell's restrictions would have eliminated the alternative jobs identified by the vocational expert. The court is under no obligation to make plaintiff's arguments for her. Nevertheless, the testimony of the vocational expert was not that the identified jobs would be eliminated, but, instead, that imposing Dr. Campbell's restrictions on lifting, carrying, and bending would erode the occupational base by 50 percent. (Tr. 736.)

surgery until May 2008.  Subsequently, even plaintiff's own doctor suggested that she was able to work with the restriction that she not stand, walk, or climb for long periods of time.  (Tr. 268, 494.)  These considerations demonstrate good cause for the weight assessed Dr. Ketelhorn's and Dr. Campbell's respective opinions.

As for the opinions of physician's assistant, Betsy Goodwin (Tr. 637-642),[13] and Dr. Bruce Taylor (Tr. 494), the ALJ noted these opinions, but found them unpersuasive because they did not relate to plaintiff's functional abilities prior to her date last insured.  (Tr. 270.)  Contrary to plaintiff's argument, there was no ambiguity concerning whether these opinions related to plaintiff's functional capacity during the relevant period of time; they patently did not.[14]  Nor was the ALJ required to recontact these sources.  That duty is triggered only when the ALJ is unable to reach a conclusion regarding disability based on the evidence before her, not merely because she rejects a source's opinion.  *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001).[15]

Moreover, the determination of a claimant's residual functional capacity is ultimately an administrative determination, 20 C.F.R. § 404.1546; *Rutledge v. Apfel*,

---

[13] Ms. Goodwin's March 2002 statement that plaintiff "is currently unable to work" (Tr. 513) not only goes to the ultimate issue of disability, which is reserved exclusively to the Commissioner, *see* 20 C.F.R. § 404.1527(d)(2), but also was issued during the period for which plaintiff in fact was found disabled, *see* 20 C.F.R. §404.1527(a)(2).  *See also* 20 C.F.R. § 404.1513(d).  *See also* **Social Security Ruling 06-03p**, 2006 WL 2329939 at *2; *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007).  The failure to consider this statement therefore undoubtedly was harmless.

[14] Dr. Taylor only began treating plaintiff in 2008, after her date last insured.  Any opinion of his on her condition prior to that date, therefore, would not have been entitled to the same presumption of controlling weight as would that of a medical source who had seen and treated plaintiff during the relevant time period.  *See Vendetti v. Astrue*, 2010 WL 3516652 at *4 (D. Colo. Aug. 31, 2010).

[15] In addition, the failure to specifically address plaintiff's neighbor's testimony did not constitute error.  Although statements from "other sources" must be considered, there is no requirement that they be weighed in the same manner as medical opinions.  *See Weaver v. Astrue*, 353 Fed. Appx 151, 154-55 (10th Cir. Nov. 18, 2009).

230 F.3d 1172, 1175 (10th Cir. 2000), not a medical one.  Accordingly, the ALJ is under no obligation to base her residual functional capacity assessment on any particular medical source's opinion.  ***See Moses v. Astrue***, 2012 WL 1326672 at *4 (D. Colo April 17, 2012).  In this instance, it is clear that she properly resolved the relatively minor conflicts in the evidence in reaching her determination.  ***See Reyes v. Bowen***, 845 F.2d 242, 245 (10th Cir. 1988); ***Gleason v. Apfel***, 1999 WL 714172 at *4 (D. Kan. Sept. 1, 1999).  ***See also Lax v. Astrue***, 489 F.3d 1080, 1088 (10th Cir. 2007) ("The substantial-evidence standard does not allow [the court] to displace the agencies' choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.") (citation and internal quotation marks omitted).[16]  Thus, remand is not indicated on this basis either.

Lastly, plaintiff claims the ALJ erred in discrediting her subjective complaints of pain.  "[C]redibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence."  ***White***, 287 F.3d at 909 (citing ***Kepler v. Chater***, 68 F.3d 387, 390-91 (10th Cir. 1995)).  So long as the ALJ links her credibility assessment to specific evidence in the record, her determination is entitled to substantial deference.  ***Id.*** at 910; ***see also Qualls v. Apfel***, 206 F.3d 1368, 1372 (10th Cir. 2000).[17]

---

[16] For this same reason, there was no error in the hypothetical the ALJ propounded to the vocational expert.  ***See Gay v. Sullivan***, 986 F.2d 1336, 1341 (10th Cir. 1993).

[17] The record contains the most fleeting of suggestions that plaintiff received both short- and long-term disability benefits from her employer.  (***See*** Tr. 226.)  Nothing in the record suggests how long plaintiff received such benefits or anything about the considerations that informed the decision to afford such benefits to plaintiff.  Thus, and although an ALJ generally must acknowledge and consider the disability determinations of other agencies, ***see Grogan v. Barnhart***, 399 F.3d 1257, 1262-63 (10th Cir. 2005), this oversight was undoubtedly harmless, ***see Bernal***, 851 F.2d at 303.

The ALJ reviewed the evidence of record, noting minimal treatment during the majority of the relevant time period. Although plaintiff had knee surgery within six months after her date last insured, she was reported to be "doing well" postoperatively, "making good progress with range of motion in the leg" such that "[s]he is now basically back to full range of motion" and "doing all of her activity" despite "occasional pain" that "come[s] and go[es] and has been getting gradually better." (Tr. 497.) The ALJ noted that despite plaintiff's complaints of unremitting pain, she exhibited normal or unremarkable findings on examination by her treating orthopedist. (Tr. 268, 495-496.) All of this evidence is more than adequate to support the ALJ's credibility determination.[18]

Thus, although there is no doubt that plaintiff continues to suffer from pain related to her impairments, "disability requires more than mere inability to work without pain." **Brown v. Bowen**, 801 F.2d 361, 362–63 (10th Cir. 1986) (citation and internal quotation marks omitted); **see also Qantu v. Barnhart**, 72 Fed. Appx. 807, 811 (10th Cir. 2003) ("We emphasize that a claimant's inability to work pain-free, standing alone, is not sufficient reason to find her disabled."). The ALJ gave good reasons, specifically tied to the evidence of record, for discrediting plaintiff's subjective complaints. I see no basis to afford her credibility determination less than the substantial deference to which it is

---

[18] Nor do I perceive error in the ALJ's consideration of plaintiff's activities of daily living. (*See* Tr. 265-266.) Although activities of daily living do not necessarily translate to the ability to perform work-related activities on a sustained basis, **Thompson v. Sullivan**, 987 F.2d 1482, 1490 (10th Cir. 1993), they do bear on a plaintiff's credibility "to the extent that the level of activity is in fact inconsistent with the claimed limitations," **Ouellette v. Apfel**, 2000 WL 1262642 at *13 (N.D. Cal. Aug. 24, 2000).

presumptively entitled.[19]

## IV. ORDERS

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **AFFIRMED**.

Dated March 20, 2014, at Denver, Colorado.

BY THE COURT:

Bob Blackburn
Robert E. Blackburn
United States District Judge

---

[19] Plaintiff's claim that the ALJ's credibility assessment is faulty because it fails to specifically address the various factors set forth at 20 C.F.R. § 404.1529(c) is unavailing. The regulation requires only that the ALJ consider these factors, not that she explicitly make findings as to each and all of them in her decision, and, thus, the ALJ was not required to undertake the type of mechanical incantation of the evidence on which plaintiff insists. *See Qualls*, 206 F.3d at 1372